IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HARMONY GRUBBS,

    Plaintiff,

vs.              Case No. 11-1125-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

    Defendant.

MEMORANDUM AND ORDER

  This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

  The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot,

considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to

determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On May 18, 2010, administrative law judge (ALJ) Linda L. Sybrant issued her decision (R. at 12-21). Plaintiff alleges that she has been disabled since May 22, 2007 (R. at 12). At step one, the ALJ found that plaintiff has never engaged in substantial gainful activity (R. at 12). At step two, the ALJ found that plaintiff had the following severe impairments: history of "probable" systemic lupus crythematosus (SLE), chronic

soft tissue pain not inconsistent with fibromyalgia, and morbid obesity (R. at 13). The ALJ further found that plaintiff's depressive disorder and history of alcohol and drug abuse were not severe impairments (R. at 13). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 13). After determining plaintiff's RFC (R. at 18), the ALJ determined at step four that plaintiff has no past relevant work experience (R. at 18). At step five, the ALJ determined that other jobs exist in significant numbers in the national economy that plaintiff could perform (R. at 19). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 21).

**III. Did the ALJ err in his finding at step two that plaintiff's depression was not a severe impairment?**

The ALJ found that plaintiff's depression was not a severe impairment (R. at 13). In making this finding, the ALJ carefully reviewed the medical and other evidence regarding plaintiff's mental impairment (R. at 13-16). The burden of proof at step two is on the plaintiff. See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis). A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis." Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir.

1988)("de minimis showing of medical severity").  A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities.[1]  Williams, 844 F.2d at 751.  However, the claimant must show more than the mere presence of a condition or ailment. If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity.  Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled.  20 C.F.R. § 404.1512(c), § 416.912(c).

The ALJ clearly gave greater weight to a consultative

---

[1] Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3; Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004).

psychological assessment by Dr. Kovach (R. at 15).  Dr. Kovach found that plaintiff had a GAF of 68.[2]  She found that plaintiff's depression "appears to be under substantial control with medication" (R. at 307).  She stated that plaintiff did not indicate that depression is keeping her from working.  Dr. Kovach went on to state that "with the exception of lower concentration, she seems to have no significant cognitive impairment that would prevent her from working" (R. at 307).

Dr. Schulman, a non-examining medical source, reviewed the record, including the report of Dr. Kovach, and concluded on August 27, 2007 that plaintiff did not have a severe mental impairment (R. at 324, 334, 336).  Dr. Fantz found on January 17, 2008 that this assessment was still valid (R. at 353).  The ALJ clearly accorded weight to these opinions in finding that plaintiff did not have severe mental impairments (R. at 19).

The ALJ noted that plaintiff's treating physician, Dr.

---

[2]GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders. The scores in this case represent the following:

> 61-70: **Some mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning...but generally functioning pretty well, has some meaningful interpersonal relationships** (emphasis in original).

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

Warren, opined that plaintiff had numerous marked and extreme mental limitations (R. at 15-16, 519-520).  However, as noted by the ALJ, his findings are not supported by the other medical evidence, particularly by the report of Dr. Kovach, a licensed clinical psychologist (R. at 305).  Furthermore, the ALJ correctly notes that no exam by Dr. Warren supports his medical source statement regarding plaintiff's alleged mental limitations (R. at 16).  Plaintiff does not point to any other medical opinion evidence that addresses plaintiff's mental limitations and their impact, if any, on plaintiff's ability to work.

   The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).  The court finds that the findings of the ALJ regarding the nature and extent of plaintiff's mental impairments and limitations are reasonable; there is sufficient evidence which a reasonable mind would accept as adequate to support the findings of the ALJ on this issue.

**IV. Did the ALJ properly consider the medical opinion evidence when formulating plaintiff's physical RFC?**

The ALJ found that plaintiff had the RFC to perform light work, with the ability to occasionally stoop, crouch, kneel, crawl and climb. The ALJ found that plaintiff could not climb ladders, ropes and scaffolds. The ALJ further determined that plaintiff should avoid hazards and extremes of temperature (R. at 18). The ALJ's RFC findings match the physical RFC assessment prepared by Dr. Tawadros, a non-examining physician, on August 27, 2007 (R. at 316-323). This finding was affirmed by Dr. Legler, another non-examining physician, on March 25, 2008 (R. at 363). The ALJ stated that the opinions of Dr. Tawadros were generally consistent with and supported by the findings, opinions, and conclusions of treating and medical sources contained in the record (R. at 19).

The ALJ also considered the physical RFC assessment by Dr. Warren, plaintiff's treating physician, who opined that plaintiff had numerous limitations, including an inability to sit and stand/walk for 8 hours in an 8 hour workday (R. at 522-523). The ALJ gave little weight to his opinions, finding that his opinions were not consistent with the medical evidence, including the physician's own records, and were not supported by plaintiff's sporadic treatment and demonstrated level of functioning (R. at 18).

9

The record also contains a consultative physical examination by Dr. Veloor on February 28, 2007. Dr. Veloor, after an examination of the plaintiff, stated the following:

> The patient at this point is unable to hold any gainful employment secondary to her diffuse arthralgias and generalized weakness. She also complains of some fatigue that limits her ability to work. The patient should avoid heavy type of work. She may be able to do some sedentary or light duty work. I advised her to contact social security disability to initiate the process for her to obtain disability. I will be happy to assist her with any kind of paperwork.

(R. at 249). The ALJ gave little weight to the opinions of Dr. Veloor as she found that the opinions of Dr. Veloor were not consistent with the totality of the evidence, and were based only on a one-time evaluation of the plaintiff in 2007 (R. at 18).

The record also contains a statement by another treating physician, Dr. Thomas, who stated the following on January 18, 2007:

> She [plaintiff] talked to me about signing an FMLA form and other documentation regarding her disability, she clearly is in a lot of pain and at this point I do not believe she is able to work... .

(R. at 260). This opinion was never mentioned by the ALJ in his decision. Although the opinion of Dr. Thomas was made approximately four months prior to her alleged onset date (May 22, 2007, R. at 12), a medical opinion of disability that predates by a few months the alleged onset date of disability

10

should nonetheless be considered by the ALJ.  <u>Lackey v. Barnhart</u>, 127 Fed. Appx. 455, 458 (10th Cir. April 5, 2005); <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1223 n.15 (10th Cir. 2004).

The ALJ asserted that the opinions of the non-examining medical sources were consistent with and supported by the findings, opinions, and conclusions of treating and medical sources.  The ALJ also asserted that the opinions of Dr. Warren, a treating medical source, and Dr. Veloor, an examining medical source, were not supported by or not consistent with the medical evidence.  However, it is these assertions by the ALJ that are not supported by the medical evidence of record.  Dr. Warren opined that plaintiff had physical limitations that prevented her from engaging in substantial gainful activity (R. at 522-523).  On March 8, 2010, the day he rendered this opinion, Dr. Warren performed a detailed physical examination of the plaintiff (R. at 515-516).  The ALJ failed to mention the fact that Dr. Warren's findings regarding plaintiff's limitations were made on the same day he performed a detailed physical examination.  Nothing in Dr. Warren's physical examination report of March 8, 2010 is inconsistent with his opinions set forth in his physical RFC assessment.  Furthermore, the opinion of Dr. Warren is consistent with the opinion of Dr. Thomas, another treating physician, who indicated in 2007 that plaintiff was disabled.  Finally, the opinion of Dr. Warren is also consistent with the opinion of Dr.

Veloor, a consulting physician, who also indicated in 2007 that plaintiff was unable to hold any "gainful employment" (R. at 249).  Thus, contrary to the assertion of the ALJ, the opinions of Dr. Warren and Dr. Veloor are in fact consistent with the opinions of other treatment providers and examining medical sources; by contrast, no other medical source opinion in the record supports the opinions of Dr. Tawadros and Dr. Legler, who never examined the plaintiff.

In the case of Krauser v. Astrue, 638 F.3d 1324 (10th Cir. 2011), the ALJ concluded that the opinions of the treating physician was inconsistent with the other evidence, including the treating physician's own treatment records.  However, the ALJ failed to reference those portions of the record with which the treating physician's opinions were allegedly inconsistent.  The court remanded the case for further hearing, holding that the ALJ should identify what in the treating physician's treatment records he found inconsistent with her opinions, and explain the inconsistency.  638 F.3d at 1331 & n.3.

As in Krauser, in the case before the court, ALJ asserted that the opinions of Dr. Warren were not consistent with the totality of the medical evidence, including that physician's own treatment records, but the ALJ stated this in conclusory fashion, without reference to those portions of the record with which Dr. Warren's opinions were allegedly inconsistent.  The ALJ also

asserted that Dr. Veloor's opinions were not consistent with the totality of the evidence, but again, the ALJ stated this in conclusory fashion, without reference to those portions of the record with which Dr. Veloor's opinions were allegedly inconsistent.

As noted above, the record in fact demonstrates that the opinions of Dr. Warren were based on a thorough physical examination performed the same day that he filled out the physical RFC assessment. Nothing in the examination report is inconsistent with the opinions of Dr. Warren. Furthermore, the opinions of Dr. Warren are consistent with the opinion of Dr. Thomas, a treating physician, and Dr. Veloor, a consulting physician who also examined the plaintiff before offering his opinions. By contrast, there is no medical opinion from either an examining or treating medical source that supports the state agency RFC assessment by a non-examining physician.

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.

Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.  The ALJ has failed to provide a reasonable explanation for why the opinions of the non-examining medical consultants should be given more weight than the opinions of two treating physicians and a consultative physician who also examined the plaintiff before offering his opinions.

The ALJ also erred by failing to even mention the opinion of Dr. Thomas.  An ALJ must evaluate every medical opinion in the record.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  This rule was recently described as a "well-known and overarching requirement."  Martinez v. Astrue, 2011 WL 1549517 at *4 (10th Cir. Apr. 26, 2011). Even on issues reserved to the Commissioner, including plaintiff's RFC and the ultimate issue of disability, opinions from any medical source must be carefully

14

considered and must never be ignored.  Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3.  The ALJ "will" evaluate every medical opinion that they receive, and will consider a number of factors in deciding the weight to give to any medical opinion.  20 C.F.R. § 404.1527(d).  It is clear legal error to ignore a medical opinion.  <u>Victory v. Barnhart</u>, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005). Furthermore, according to SSR 96-8p:

> If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

1996 WL 374184 at *7.

For these reasons, the court finds that the ALJ failed to provide a proper explanation for rejecting the opinions of two treating physicians, Dr. Thomas and Dr. Warren, and for rejecting the opinion of Dr. Veloor, an examining physician.  This case shall be remanded in order for the defendant to give proper consideration to the medical opinion evidence, particularly the opinions of the treating and examining physicians.

**V.  Did the ALJ err in her credibility analysis?**

Plaintiff also asserts error by the ALJ in her credibility and RFC findings.  The court will not reach this issue because ut may be affected by the ALJ's resolution of the case on remand after giving further consideration to the medical opinion evidence, as set forth above.  <u>See</u> <u>Robinson v. Barnhart</u>, 366 F.3d

1078, 1085 (10th Cir. 2004).

However, the court will address one of the arguments raised by the ALJ in her decision.  The ALJ stated that plaintiff's daily activities were not consistent with a finding of total disability (R. at 14).  When this case is remanded, the ALJ should consider plaintiff's daily activities in light of the regulations and case law.  According to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity.  20 C.F.R. § 404.1572(c) (2010 at 396).  Furthermore, although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity.  Thompson, 987 F.2d at 1490.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping.  The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed

credible.  The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work.**  As we said in McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world."  In other words, evidence of performing general housework does not preclude a finding of disability.  In Rainey v. Dep't of Health & Human Servs., 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries.  We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work. In Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities, which included making her bed, preparing food, performing light housekeeping, grocery shopping, and visiting friends.  We found this to be an unpersuasive reason to deny benefits: **"We have repeatedly held...that 'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.' "** Id. (quoting Hogg v. Shalala, 45 F.3d 276, 278 (8th Cir.1995)).  Moreover, we have reminded the Commissioner
>
>> **that to find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes**

17

>    **competitive and stressful
>    conditions in which real people
>    work in the real world...The
>    ability to do light housework with
>    assistance, attend church, or visit
>    with friends on the phone does not
>    qualify as the ability to do
>    substantial gainful activity.**
>
>    Thomas v. Sullivan, 876 F.2d 666, 669 (8th
>    Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 14th day of March 2012, Topeka, Kansas.


                                s/ Sam A. Crow
                                Sam A. Crow, U.S. District Senior Judge